## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No.

**MARIO HEREDIA,**

   PLAINTIFF,

vs.

**PUEBLO SCHOOL DISTRICT 60; DARLENE BERMUDEZ, individually and as an employee of District 60,**

   DEFENDANT.

## VERIFIED COMPLAINT

**COMES NOW** Mario Heredia ("Mr. Heredia"), Plaintiff, by and through his attorneys of record, Daniel T. Goodwin and M. Paige Orgel of The Law Offices of Daniel T. Goodwin, and for his Verified Complaint and Jury Trial Demand against Defendants, Pueblo School District 60, a Colorado School District ("PSD"), and Darlene Bermudez ("Bermudez")(collectively referred to as "Defendants") states and alleges:

1.     This is a civil action for damages brought by Mr. Heredia against PSD, his former employer and Bermudez, his former supervisor.

2.     Mr. Heredia alleges that he is an adult male, protected under Title VII of the Civil Rights Act of 1964, as amended.

3.     Mr. Heredia alleges that as an adult male, his employment was not protected from hostility, disparate treatment, gender discrimination and wrongful termination in contravention of public policy as expressed by applicable federal and Colorado common law.

## JURISDICTION

4.      Mr. Heredia filed a timely charge of discrimination with the Colorado Department of Regulatory Agencies ("DORA"), and on March 22, 2019, was granted the right to file a private action for his claims of hostile work environment, disparate treatment, gender discrimination and wrongful discharge.  Mr. Heredia has met all administrative prerequisites necessary to bring this action.

5.      The jurisdiction of this Court is invoked to secure protection of and redress for deprivation of rights guaranteed by federal and Colorado law, which rights provide for injunctive and other relief for unlawful discrimination in employment, including hostile work environment, disparate treatment, gender discrimination and wrongful discharge.

6.      Subject matter jurisdiction is invoked pursuant to: 28 U.S.C. § 1331, as this action invokes a federal question; 28 U.S.C. § 1343, which applies to actions to protect civil rights; and Title VII of the Civil Rights Act of 1964, as amended, including 42 U.S.C. § 2000e-5(f).

7.      Venue is proper in the District of Colorado pursuant to 28 U.S.C. § 1391(b) and (c), because, at times relevant hereto: a) PSD operated and maintained its principal business operations in Colorado; b) all of or a substantial part of the events or omissions giving rise to Mr. Heredia's claims occurred within the District of Colorado; c) PSD employed Mr. Heredia at its business operations in the school district of Pueblo, Colorado; and d) Defendant Bermudez resided in Colorado.

8.      Unless otherwise stated, the allegations herein relate to times relevant to the facts giving rise to this action.

## PARTIES

9.      Mr. Heredia is a Colorado citizen who resides at 2640 Canyon Heights Road Pueblo, Colorado 81005.

10.     PSD is a Colorado School District that regularly conducts business in Pueblo, Colorado with an administrative mailing address of 315 West 11th Street Pueblo, Colorado 81003.

11.     Bermudez is a supervisory employee of District 60 and resides in Colorado.

## GENERAL ALLEGATIONS

12.     Mr. Heredia was employed by PSD as a Childhood Family Support and Outreach Coordinator/Translator.  He is fluent in English and Spanish.

13.     Mr. Heredia's supervisor was Bermudez who is a female employee of District 60.

14.     Mr. Heredia was PSD's only male employee during most times relevant to his Complaint.

15.     Mr. Heredia was hired on February 19, 2013, and wrongfully terminated on June 30, 2017.  Notice of his pending termination was given in May, 2017.

16.     Beginning the spring of 2014, Bermudez began treating Mr. Heredia differently than the female employees under her supervisory control.

17.     Bermudez would regularly publicly humiliate Mr. Heredia in front of his fellow employees.

18.     Bermudez would without cause regularly criticize Mr. Heredia, often times in front of his fellow employees.

19.     Bermudez changed Mr. Heredia's work schedule in various ways for reasons that can only be described as discriminatory because similar work schedule changes were not made to the female employees.

20.    Bermudez consistently micromanaged, scrutinized, questioned, and demeaned Mr. Heredia.

21.    Bermudez did not micromanage, scrutinize, question, or demean female employees.

22.    Bermudez mistreated, bullied, and otherwise harassed Mr. Heredia.

23.    Bermudez did not mistreat, bully, or harass any of the female employees.

24.    Bermudez began reclassifying Mr. Heredia's job duties, effectively diminishing his work assignments as a Family Support and Outreach Coordinator/Translator to mere custodial and menial tasks.

25.    Bermudez assigned the job duties that she took from Mr. Heredia to other district employees, all of whom were female.

26.    At all times relevant, Mr. Heredia completed his work and all assigned work tasks effectively and competently.

27.    Neither PSD nor Bermudez maintained a written record alleging insufficient work performance by Mr. Heredia.

28.    On April 17, 2015, Mr. Heredia complained to the Human Resources department of PSD that Bermudez was treating him differently than the female employees under her supervision and that this treatment created a hostile work environment and was accompanied by gender discrimination.

29.    After promising to take action to correct the obvious discrimination, PSD failed to take action based on Mr. Heredia's April 17, 2015 complaint, and knowingly and willingly allowed the disparate treatment, the hostile work environment and the gender discrimination to continue.

30.     After Mr. Heredia's complaint to PSD's Human Resources department, Bermudez's actions increased the hostile work environment, the disparate treatment and the gender discrimination.

31.     The actions of Bermudez against Mr. Heredia grew more pervasive and severe constituting an intentional infliction of emotional distress. This treatment continued from 2014 through 2015, 2016, and 2017.

32.     In approximately the spring of 2017, PSD hired three (3) additional female employees to work in Mr. Heredia's department.

33.     The three (3) newly hired female employees were assigned job duties that Mr. Heredia previously had been performing without any hint that his performance of those duties was inadequate or incompetent.

34.     On information and belief, Mr. Heredia alleges that PSD and Bermudez desired to terminate Mr. Heredia because he was male, but there was no justification for doing so. As a result, they hired new employees and assigned them the job duties previously performed by Mr. Heredia thereby eliminating him as an employee.

35.     On or around June 30, 2017, Mr. Heredia was discharged by the PSD due to alleged "necessary budget cuts" and alleged redundancy of his position.

36.     On information and belief, Mr. Heredia alleges that the reasons stated for his termination were pretext to cover up the discrimination that was the true cause of the termination.

37.     On September 5, 2017, at the request of a Human Resource Consultant work for PSD, an outside entity, Employers Council Inc. ("ECI") was hired to investigate the complaints that Mr. Heredia was making about Bermudez and the work environment that she created for Mr. Heredia.

5

38.     On September 27, 2017, ECI filed a report with PSD that identified and confirmed Plaintiff's allegations of harassment (hostile work environment), disparate treatment and gender discrimination against him by Bermudez.

39.     Three-and-a-half months later, on January 16, 2018, PSD mailed a letter to Mr. Heredia admitting the findings made by ECI. The letter offered to reinstate Mr. Heredia as an employee but only until the end of the school year. The letter did not define the duties of the job nor the supervisors to whom Mr. Heredia would report. The letter made it clear that the contract offer terminated June 29, 2018.

40.     Mr. Heredia declined the offer because it provided no indication that the discriminatory treatment would cease, nor did it return a job that could be relied on for future employment.

41.     Following his termination, Mr. Heredia filed a complaint with DORA which identified the discrimination to which he was subjected as an employee of PSD.

42.     On January 22, 2019, the Colorado Civil Rights Division of DORA returned its DETERMINATION of the facts finding that the evidence was sufficient to support Mr. Heredia's claims of hostile work environment, disparate treatment, gender discrimination and wrongful discharge.

**FIRST CLAIM FOR RELIEF**
**TITLE VII – DISCRIMINATION**
**42 U.S.C. § 2000e**
**Hostile Work Environment**
**Disparate Treatment**
**Discrimination in Terms and Conditions of Employment**
**(This Claim is against PSD)**

43.     Mr. Heredia incorporates herein paragraphs 1-42, above, as if fully set forth herein.

44.     Mr. Heredia is an adult male and is a former "employee" of PSD, as that term is defined in Title VII, 42 U.S.C. §2000e(f).

45.     Defendant is engaged in an activity that affects commerce, as that term is defined in Title VII, 42 U.S.C. §2000e(h), and is an "employer", as that term is defined in Title VII, 42 U.S.C. §2000e(b).

46.     PSD committed unlawful employment practices against Mr. Heredia according to the provisions of Title VII, 42 U.S.C. §2000e-2, by discriminating against Mr. Heredia with respect to his terms, conditions, or privileges of employment with PSD; by creating a hostile work environment within which Mr. Heredia had to function; by allowing him to suffer discrimination as a result of his gender; by subjecting Mr. Heredia to disparate treatment and discipline; and by discharging Mr. Heredia on account of his gender.

47.     PSD knew or should have known of the intolerable working conditions created by Bermudez, as alleged above.

48.     PSD had the ability and the duty to eliminate the harassment to which Mr. Heredia was subjected but took no action to terminate the harassment.  Rather PSD intentionally tolerated the harassment and wrongfully terminated Mr. Heredia after citing pretextual reasons for doing so.

49.     PSD knew or should have known of the intolerable working conditions of the hostile work environment to which Mr. Heredia was subjected, as alleged above.

50.     The actions and inactions of PSD, including but not limited to the actions and inactions of Bermudez, as alleged above, created a hostile work environment that no reasonable person should have to endure.

51.     PSD violated the unlawful discrimination provisions of Title VII by not affirmatively seeking out and eradicating the intolerable working conditions of the hostile work

environment before and after Mr. Heredia complained to the Human Resources department of PSD.

52.     PSD had knowledge of or should have known of such intolerable conditions before and after Mr. Heredia complained to  the Human Resources department of the discrimination, disparate treatment, and hostile work environment; knew or should have known that its employees were in violation of federal law, and failed to make good faith efforts to comply with Title VII.

53.     PSD's unlawful employment practices led to the intolerable working conditions of the hostile work environment that culminated in Mr. Heredia's wrongful termination.

54.     Mr. Heredia has suffered compensatory and punitive damages, in addition to other damages, to be proved at trial.

## SECOND CLAIM FOR RELIEF
### Wrongful Discharge in Violation of Public Policy as set forth in the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402 *et seq.*
### (This Claim is against PSD)

55.     Mr. Heredia incorporates herein paragraphs 1-54, above, as if fully set forth herein.

56.     The public policy of the state of Colorado prohibits employment discrimination based on a protected attribute under the Colorado Anti-Discrimination Act, C.R.S. § 24-34-402 et seq. (the "Act").

57.     While employed by PSD, Mr. Heredia exercised his statutory employment rights under the Act.

58.     The termination of Mr. Heredia's employment by PSD undermined the clearly expressed public policy of the Act, specifically, that Mr. Heredia not be harassed during the course of employment or discriminated against in matters of terms, conditions, or privileges of employment because of his sex or gender, or subjected to disparate treatment and discipline,

including but not limited to termination, because of his sex or gender and that he not be wrongfully discharged under false pretenses.

59.    The public policy of the Act impacts the public and justifies interference into PSD's decision to terminate Mr. Heredia.

60.    PSD was aware or reasonably should have been aware that its actions in harassing, discriminating, and discharging Mr. Heredia, violated his rights as clearly expressed in the Act.

61.    As a result of the harassing, discriminating, and unlawful and wrongful discharge of Mr. Heredia's employment by PSD, through its employees as alleged above, Mr. Heredia has suffered damages to be proven at trial.

62.    Mr. Heredia's damages for wrongful discharge in violation of public policy include compensatory front pay and back pay, economic and non-economic damages and other damages to be proved at trial.

**THIRD CLAIM FOR RELIEF**
**Intentional infliction of Emotional Distress, C.R.S. § 24-10-118 *et seq.*)**
**(This Claim is against PSD and Bermudez)**

63.    Mr. Heredia incorporates herein paragraphs 1-62, above, as if fully set forth herein.

64.    The Defendants' actions against Mr. Heredia were a series of actions over nearly four (4) years of employment when taken together constituted intentional extreme and outrageous conduct intentionally inflicting emotional distress on Mr. Heredia.

65.    The Defendants' actions were undertaken intentionally and with the intent of causing Mr. Heredia severe emotional distress.

66.    The Defendants' actions did cause Mr. Heredia severe emotional distress not only in his employment life but in his family life.

67.     The Defendants' actions caused Mr. Heredia to undergo personal health problems and personal financial problems which resulted in the loss of his financial stability all of which led to the loss of his marriage and the disintegration of his personal and family relationships.

68.     The Defendants' actions have continued to plague Mr. Heredia in the small community in which he lives because he has not been able to find a job in the education field due to the reports that potential employers received from Defendants causing continued financial and emotional stress.

69.     The Defendants' action have caused Mr. Heredia damages which will be presented and proven at the time of trial.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, Mario Heredia, respectfully prays this Court to enter judgment in his favor and against the Defendants and that it order the following relief:

A.     Past economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, back pay, front pay, lost benefits, pecuniary economic damages, and special damages;

B.     Past and future non-economic damages for all claims as allowed by law, in an amount to be determined at trial, including, but not limited to, mental suffering, emotional distress, loss of enjoyment of life, humiliation, and intimidation;

C.     Punitive damages as allowed by law, in an amount to be determined at trial;

D.     Attorneys' fees and costs, as allowed by law;

E.     Pre-judgment and post-judgment interest; and

F.     Any other appropriate relief necessary to make Mr. Heredia whole and compensate him for the civil rights violations described above, and any further

legal and/or equitable relief, as deemed appropriate by the Court and authorized

by law.

## JURY TRIAL DEMAND

Mr. Heredia demands a jury trial on all issues of fact raised by his Verified Complaint.

Respectfully submitted on this 13th day of June, 2019.

LAW OFFICES OF DANIEL T. GOODWIN


s/Daniel T. Goodwin
Daniel T. Goodwin
Paige Orgel
LAW OFFICES OF DANIEL T. GOODWIN
10901 W. 120th Ave, Ste. 350
Broomfield, CO 80021
Telephone:  303-763-1600
Fax:  303-457-1175
E-mail:  dangoodwin@danieltgoodwin.com
          paigeorgel@danieltgoodwin.com
ATTORNEYS FOR PLAINTIFF

Pursuant to C.R.C.P. 121 §1-26(9), a printed copy of this electronically-filed document with original signatures is being maintained at the Law Offices of Daniel T. Goodwin and is available for inspection by other parties or the court upon request.

## VERIFICATION

I swear and affirm under oath that I have read the foregoing Verified Complaint and that the statements set forth therein are true and correct to the best of my knowledge.

_Mario Heredia_
Mario Heredia

Subscribed, sworn and affirmed before me this 13ᵗʰ day of June, 2019, by Mario Heredia in the County of __Alamosa__ , State of Colorado.

_Ariel Haslett_

Notary Public

My commission expires: __08 / 07 / 2022__

> ARIEL HASLETT
> NOTARY PUBLIC
> STATE OF COLORADO
> NOTARY ID 20184031820
> MY COMMISSION EXPIRES AUGUST 7, 2022

NOTARY SEAL

12